ELAINE KAY DE BLOCK,

                                        Plaintiff,

        v.                                                    3:13-CV-1366
                                                              (LEK/ATB)
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
LAUREN E. MYERS, SPECIAL ASS'T U.S. ATTORNEY, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  This case has proceeded in accordance with General Order 18. Plaintiff's counsel filed his memorandum of law on March 31, 2011. (Dkt. No. 10).  On June 12, 2014, defense counsel filed her brief, which contained a motion to remand this case to the Appeal's Council for further review, accepting one of the arguments made by plaintiff's counsel in his brief. (Dkt. Nos. 13).  By letter dated January 30, 2015, plaintiff's counsel objected to the remand as proposed by defendant. (Dkt. No. 15).

Plaintiff argues that the court should not remand to the Appeals Council based on one issue alone and has objected to the proposed terms of the remand in general. (*Id.*) This court has reviewed all the issues and will make a determination of the proper relief to afford plaintiff.  For the following reasons, this court agrees with defendant and will

recommend a remand to the Commissioner as discussed below.

## I.    PROCEDURAL HISTORY

### A.    Current Application

On January 19, 2011, plaintiff filed the current application for Social Security Disability Insurance Benefits ("DIB"), alleging disability, beginning November 19, 1991, due to a "lower back injury" and "arthritis." (Administrative Transcript ("T.") 128, 150).  Plaintiff's current application was initially denied on April 5, 2011. (T. 55). After a hearing on June 25, 2012, at which plaintiff testified (T. 42-64), Administrative Law Judge ("ALJ") Elizabeth Koennecke denied the application in a decision issued on August 8, 2012 (T. 7-23).  The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on October 9, 2013.  (T. 1-6).

### B.    Prior Application

On July 15, 1996, plaintiff filed a prior application for DIB, in which she also claimed disability as of November 19, 1991, based upon the same alleged impairments. (T. 10) (ALJ Koennecke's Decision).  Plaintiff's claim was denied at the initial level on September 30, 1996, and plaintiff did not appeal. (*Id.*)  In her decision, denying the current application, ALJ Koennecke stated that generally, a determination made at any level of the administrative review process becomes "final and binding" if the claimant does not timely appeal. (*Id.*) (citing 20 C.F.R. § 404.987(a)).  Although the Commissioner has through the years changed the methods and procedural steps in the

appeal process,[1] a request for review of an initial decision must be made within 60 days of receipt of notice of the previous determination. 20 C.F.R. §§ 404.909(a)(1) (reconsideration if applicable); 404.933(b)(1) (request for hearing before an ALJ). In this case, plaintiff's prior application was denied in September of 1996, and her current application was filed in 2011. Thus, plaintiff's current application is not timely if it based upon the same impairments and evidence that were the subjects of the prior application.

A case that has become "final and binding"[2] may be "reopened" by the Commissioner under certain circumstances. 20 C.F.R. § 404.988. The Commissioner's determination may be reopened within 12 months of the date of the notice of the initial determination "for any reason," or it may be reopened within four years of the initial determination "for good cause." *Id.* § 404.988(a), (b). The Commissioner's decision may also be reopened "at any time" if the decision was obtained by fraud or "similar fault."[3] *Id.* § 404.988(b)(1).

Good cause is defined in 20 C.F.R. § 404.989, and includes the production of "new and material evidence;" a clerical error in computing benefits; or the evidence used in the determination clearly shows that an error was made. *Id.* § 404.989(a)(1)-(3). The Commissioner's refusal to reopen is not subject to review in a federal court action.

---

[1] *See* 20 C.F.R. § 404.906 ("Testing Modifications to the disability determination procedures.")

[2] This term is also referred to as "res judicata." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 99 (N.D.N.Y. 2011) (citation omitted).

[3] Reopening may also occur for various other reasons that are not applicable to this action. *Id.* § 404.988(c)(2)-(11).

*Hussain v. Comm'r of Soc. Sec.*, No. 13 Civ. 3691, 2014 WL 4230585, at *10 (S.D.N.Y. Aug. 27, 2014) (citing *Califano v. Sanders*, 430 U.S. 99, 108 (1977) (section 405(g) does not authorize judicial review of an agency's refusal to reopen a claim for social security benefits).

In this case, ALJ Koennecke found that plaintiff had not fulfilled any of the requirements for reopening of her previous "final and binding" application for DIB. (T. 10-11). Normally, this would require the dismissal of plaintiff's request for a hearing "under the doctrine of *res judicata*." (T. 11) (italics in original). However, ALJ Koennecke also found that (the Office of Disability Adjudication and Review ("ODAR") was unable to locate plaintiff's July 15, 1996 claim file or the September 30, 1996 determination on that claim. (T. 11). Because of the unavailability of the prior file, ALJ Koennecke could not determine whether plaintiff's current application involved the same facts as her previous DIB claim, "which is a prerequisite for invoking the bar of *res judicata*." (*Id.*) (italics in original). The ALJ gave plaintiff the "benefit of the doubt" and afforded her the "opportunity for a hearing and new decision." (*Id.*) (citing HALLEX I-2-4-40).[4] The ALJ afforded plaintiff a new hearing and decision, and plaintiff timely appealed the denial at both the ALJ and the Appeals Council levels. Thus, this court may review the Commissioner's decision on the merits.

## II. <u>GENERALLY APPLICABLE LAW</u>

### A. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

---

[4] "HALLEX" stands for Hearings, Appeals, and Litigation Law Manual as discussed below.

disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff has the burden of establishing disability at the first four steps.
However, if the plaintiff establishes that her impairment prevents her from performing
her past work, there is a "limited burden shift to the Commissioner" to "show that there
is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d
303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine
whether the correct legal standards were applied and whether substantial evidence
supported the decision.  *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin,
Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence
is "'such relevant evidence as a reasonable mind might accept as adequate to support a
conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012).  It must be "more
than a scintilla" of evidence scattered throughout the administrative record.  *Id.*
However, this standard is a very deferential standard of review " – even more so than
the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial
evidence, a reviewing court considers the whole record, examining the evidence from
both sides, because an analysis of the substantiality of the evidence must also include
that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859
F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its
interpretation of the administrative record for that of the Commissioner, if the record
contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v.*

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. ISSUES IN CONTENTION

In her brief, plaintiff raised three issues for this court's review:

(1)     The Commissioner's decision is unsupported by substantial evidence and fails to comply with the "Treating Physician Rule" because the Appeals Council failed to provide any reasons for the rejection of Dr. Haswell's opinion. (Pl.'s Br. at 9-14) (Dkt. No. 10).

(2)     The ALJ erred in assessing plaintiff's credibility because she mischaracterized plaintiff's testimony. (Pl.'s Br. at 14-17).

(3)     The ALJ's step five determination is unsupported by substantial evidence because she should have obtained the testimony of a vocational expert based upon plaintiff's "significant" non-exertional impairments. (Pl.'s Br. at 17-18).

Defendant's motion to remand accepts plaintiff's first argument and concedes that the Appeals Council failed to properly analyze the opinion of plaintiff's primary care physician, Dr. David P. Haswell. (Def.'s Br. at 5-7). Defendant moves for a remand so that the Appeals Council may correct its error.

## IV.    REMAND

### A.    Legal Standards

Pursuant to section 405(g), the court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Remand to the Commissioner for further development of the evidence is appropriate when there are gaps in the administrative record or where the ALJ has applied an improper legal standard. *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).  The Social Security Regulations provide that when a Federal Court remands a case to the commissioner "for further consideration," "the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision." 20 C.F.R.  §§ 404.983, 416.1483.[5]  Reversal for calculation of benefits is appropriate only if the record contains persuasive proof of disability and a remand for further evidentiary proceedings would serve no useful purpose. *Rosa, supra.*

Although the defendant has moved to remand on one of the issues raised by plaintiff, defense counsel argues that a new hearing is not required, based upon the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") II-5-1-3.  This HALLEX section provides that the Appeals Council ***may***

---

[5] Section 416.1483 is identical to section 404.983, but is applicable to Supplemental Security Income ("SSI") applications.  Plaintiff in this case has applied only for Disability Insurance Benefits.

8

require the ALJ to hold a new hearing if the Appeals Council concludes that a hearing is required to adequately document the evidentiary record or to satisfy the requirements of due process. *Id.*

## V. FACTS

Plaintiff's counsel has included a statement of facts in his brief that the court will incorporate, with any exceptions as noted in the discussion below. Complicating the consideration of this case is the fact that the relevant time period under consideration is from November of 1991 (when plaintiff alleges that her disability began) and September 30, 1995 (when plaintiff's insured status expired). Plaintiff must show that she met the disability requirements on or before September 30, 1995. Her subsequent condition is not relevant, except to the extent that it is related to her condition prior to September 30, 1995. ALJ Koennecke made that clear to plaintiff and her attorney at the beginning of the hearing. (T. 47-48).

## VI. THE ALJ'S DECISION

After determining that she was not going to bar plaintiff's current application based upon res judicata, ALJ Koennecke analyzed the evidence of record, including medical records submitted by plaintiff's counsel after the hearing. (T. 11). The ALJ found that plaintiff did not work from November 19, 1991 until her insured status expired on, September 30, 1995. (T. 14).

ALJ Koennecke found that plaintiff's degenerative disc disease of the lumbar and cervical spine were "severe" under the regulations. (*Id.*) The ALJ found that the "documented medical evidence of record, which consists of clinical and diagnostic

findings, is persuasive in supporting a conclusion" that plaintiff's lumbar and cervical degenerative disc disease "caused significant limitation in the claimant's ability to perform basic work activities." (*Id.*)  In making this finding, the ALJ noted that plaintiff experienced a work-related injury in 1987.  After being diagnosed with the degenerative disc disease, plaintiff underwent a series of facet blocks and epidural steroid blocks during 1992 and 1993.  A lumbar discogram[6] from January 20, 1995 showed "annular tears at the L3-4, L4-5, and L5-S1 disc space levels."[7] (*Id.*)  A CT Scan of plaintiff's lumbar spine, also performed on January 20, 1995 showed disc bulges at the L3-4 and L4-5 levels, as well as a small central herniation at L5-S1. (T. 15).  X-rays of plaintiff's cervical spine, taken during a January 22, 1995 emergency room visit showed "marked degenerative change at C5-6, with progression since April 13, 1989, and encroachment upon the right neural foramen at C5-6, but no fracture."[8]

---

[6] A discogram is a test used to evaluate back pain, often used when magnetic resonance imaging ("MRI") does not find structural abnormalities. http://www.ncbi.nlm.nih.gov/pmc/articles/ PMC2684219.  "Provocative discography is an imaging-guided procedure in which a contrast agent is injected into the nucleus pulposus of the intervertebral disc.  It provides both anatomical and functional information about a disc suspected to be diseased.  Following intradiscal contrast injection, disc morphology is usually assessed on radiographs or computed tomography (CT), or both.  The functional evaluation consists of pain provocation and careful assessment of the patient's response to pain." http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3097593/

[7] An intervertebral disc . . . has a strong outer ring of fibers, called the annulus fibrosus . . . . If it tears and no disc material is ruptured, this is called an annular tear.  The outer 1/3 of the disc's annular ring is highly innervated with pain fibers. Thus, if a tear involves the outer 1/3 it may be extremely painful. This tear will heal with scar tissue over time but is more prone to future tears and injury. Studies also indicate that annular tears may lead to premature degeneration of the disc, endplates, and facet joints." http://www.spinemd.com/symptoms-conditions/annular-tear.

[8] "Spinal nerves pass through an opening in the spinal column known as the foramen. The process of disc degeneration or bulging causes the foramen to become narrower." http://www.spinaldisorders.com/neural-foraminal-narrowing.htm.

(*Id.*)

At Step 3 of the sequential evaluation, the ALJ found that plaintiff did not have

an impairment which met or medically equaled the severity of a Listed Impairment.

She considered plaintiff's impairments under 20 C.F.R. Pt. 404, Subpt. P, App. 1

§ 1.04, involving disorders of the spine. Citing hospital records from 1995, the ALJ

found that there was no evidence to suggest that plaintiff experienced the type of severe

nerve root compression, spinal arachnoiditis,[9] or lumbar spinal stenosis,[10] resulting in

an inability to ambulate effectively as required under Listing 1.04. (T. 15) (citing T.

200-33). Thus, plaintiff's degenerative disc disease failed to meet the appropriate level

of severity. (*Id.*)

At Step 4, ALJ Koennecke found that plaintiff had the RFC to perform light

work through September 30, 1995. (*Id.*) The ALJ specified that plaintiff could

occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; sit for six hours; and

stand/walk for six hours in an eight hour work day. (*Id.*) In making this finding, the

ALJ gave "considerable weight" to the medical opinions of plaintiff's pain management

physicians, dated December 19, 1992; April 15, 1992; July 22, 1993; December 9,

1993; and February 2, 1995, all of which were rendered "immediately following the

[9] Arachnoiditis is a pain disorder, caused by inflamation of the "arachnoid," one of the membranes surrounding and protecting the nerves of the spinal cord. www.webmd.com/pain-management/guide/pain-management-arachnoiditis.

[10] "In lumbar stenosis, the spinal nerve roots in the lower back are compressed, or choked, and this can produce symptoms of sciatica  tingling, weakness or numbness that radiates from the low back and into the buttocks and legs  especially with activity." http://www.spine-health.com/conditions/spinal-stenosis/what-spinal-stenosis.

administration of facet blocks and epidural steroid blocks. . . ." (T. 16). The ALJ cited

the fact that the physicians failed to place any restrictions upon her return to work,

(except for the April 15, 1992 report which stated that plaintiff could return to work

"the next day"). (*Id.*) (citing "Exhibit 1F") (T. 200-27).[11]

The ALJ gave little weight to the medical report, dated June 18, 2012 and the

RFC evaluation, dated June 25, 2012, submitted by plaintiff's chiropractor, D. Thomas

Swick, D.C. (T. 16) (citing Exhibits 15F and 20F).[12] In rejecting Dr. Swick's very

restrictive RFC, together with his opinion that the degree of restriction existed since the

disability onset date, the ALJ pointed out that a chiropractor is not an acceptable

medical source under the regulations, and although his opinion must be considered, as

an "other source," it need not be given "controlling weight." (T. 16-17). The ALJ also

noted that Dr. Swick did not begin treating plaintiff until almost three years after the

expiration of her insured date, concluding that his opinion "is clearly based on nothing

more than the claimant's subjective report." (T. 17).

Some weight was given to the fact that Workers' Compensation did not "return

the claimant to her past relevant work as a floor hand." However, the ALJ noted that

plaintiff's prior work was performed at a medium level, and the inability to perform

medium work would not preclude plaintiff from performing a light work job. (*Id.*)

The ALJ found plaintiff only "partially credible" regarding the extent of her

---

[11] Although the ALJ did not specify what part of Exhibit 1F she was citing, this court has determined that the relevant reports appear at (T. 220-27).

[12] Exhibit 15F (medical report) appears at T. 338 and Exhibit 20F (RFC evaluation) appears at T. 448-51.

limitations. (T. 17-18). In making this determination, the ALJ listed the facts that "enhanced" plaintiff's credibility, and those that "detract[ed]" from plaintiff's credibility. (T. 17). "Enhancements" to plaintiff's credibility, discussed by the ALJ, included her continued receipt of Workers' Compensation benefits and her willingness to undergo a series of facet and epidural blocks during the relevant time period. (*Id.*) However, the ALJ stated that plaintiff testified that Workers' Compensation was notified of "the bad results of her functional capacity evaluation," but never changed plaintiff's classification to 100% disabled from "permanently partially disabled." (*Id.*) Plaintiff also testified that she stopped working as a floor hand because of her back injury, but she later stated that "the plant closed before she was able to recover." The ALJ interpreted this statement "to imply that the claimant was planning to go back to work before the plant closed." (*Id.*) Finally, the ALJ stated that on December 16, 1996, plaintiff told her primary care physician that she was walking "two miles four to five times a day and was not taking any medicines for chronic disability." (T. 17) (citing T. 452-518). The ALJ noted that the December 16, 1996 office visit took place shortly after the plaintiff's prior application was denied on September 30, 1996. (T. 17-18).

Because plaintiff was limited to light work, she could not perform her past relevant "medium" work, and the ALJ proceeded to consider whether plaintiff could perform any other substantial gainful activity in the national economy. (T. 18-19). The ALJ found that plaintiff did not have any non-exertional limitations that would have significantly limited the full range of light work that she could perform and used the

Medical Vocational Guidelines[13] ("The Grid"). Based on plaintiff's age, education and prior work experience, a finding of "not disabled" for purposes of DIB benefits was dictated by the appropriate Grid provision for the period between November 19, 1991 and September 30, 1995. (T. 18-19) (citing Medical Vocational Rule 202.21).

## VII. TREATING PHYSICIAN

### A. Legal Standards

While a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is *not* required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that a report of a treating physician is rejected. *Id.* An ALJ may not arbitrarily substitute his/her own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d at 79.

The treating physician rule applies to the Appeals Council. *See, e.g., Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (the Appeals Council has an obligation to explain the weight it gave to the opinions of the plaintiff's treating doctors); *Barnwell v. Colvin*, No. 13 Civ. 3683, 2014 WL 4678259 at *15 (S.D.N.Y. Sept. 19, 2014) (when considering additional evidence from treating sources, the Appeals Council was required to comply with regulations applicable to the assessment of opinions from

---

[13] 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.21.

treating sources.); *Knepple–Hodyno v. Astrue*, No. 11–CV–443, 2012 WL 3930442 at *9 (E.D.N.Y. Sept. 10, 2012) ("When new materials are submitted from treating physicians, the Appeals Council is 'obligated to provide an explanation for [its] decision not to afford controlling weight to an assessment apparently provided by Plaintiff's treating physician.'"); *Longbardi v. Astrue*, No. 07 Civ. 5952, 2009 WL 50140 at *25 (S.D.N.Y. Jan.7, 2009) ("Failure to provide explicit 'good reasons' for not crediting a treating source's opinion is a ground for remand.") (citing *Snell v. Apfel* 177 F.3d at 133).

### B. Application

In this case, after the ALJ rendered her decision on August 8, 2012, plaintiff submitted an RFC evaluation ("Medical Source Statement"), completed by Dr. David P. Haswell, M.D., who was plaintiff's treating physician during the period at issue and continues to treat plaintiff at present. The RFC evaluation is dated July 30, 2012. (T. 520-23). The RFC is very restrictive, and among other things, states that the plaintiff can only sit for 20 minutes at a time; stand for 20 minutes at a time, for a total of less than two hours per day. (T. 520). Dr. Haswell stated that plaintiff could walk "less than 1" city block without rest or severe pain. (*Id.*) Dr. Haswell also stated that the limitations he suggests, "existed and persisted to the same degree since at least November 19, 1991." (T. 523). Without repeating all the limitations contained in Dr. Haswell's RFC evaluation, it is clear that these limitations are inconsistent with an ability to perform light work, which requires, inter alia, the ability to stand and walk "off and on" for a total of "approximately" six hours in an eight hour day. *See*

*Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 WL 4273321, at *10 n.20 (E.D.N.Y. Aug. 28, 2014) (citing *Rivera v. Colvin*, No. 11 Civ. 7469, 2014 WL 3732317, at *39 (S.D.N.Y. July 28, 2014) (citing Social Security Ruling ("SSR") 83-10)).

Dr. Haswell's RFC was submitted to the Appeals Council for consideration. (T. 4). In its decision denying plaintiff's request for review, the Appeals Council included list of exhibits that were considered. (*Id.*) (AC Exhibit List). The list included plaintiff's counsel's brief and Dr. Haswell's July 30, 2012 RFC evaluation. (*Id.*) However, in the decision denying review of the ALJ's decision, the Appeals Council only stated that it "found no reason under our rules to review the [ALJ's] decision. . . . Therefore, we have denied your request for review." (T. 1). The Appeals Council stated that it "considered the reasons [plaintiff disagreed] with the decision *and the additional evidence listed on the enclosed Order of Appeal's Council*." (*Id.*) (emphasis added). The Appeals Council failed to include any discussion of why it rejected the RFC evaluation and opinion of plaintiff's treating physician contained in that evaluation. As stated above, case law and the regulations require that it do so. *See* 20 C.F.R. § 404.1527(c)(2).

Plaintiff's first argument is that the failure of the Appeals Council to state its reasons for rejecting Dr. Haswell's opinion was legal error. (Pl.'s Br. at 9-14). The Commissioner concedes that the Appeals Council committed reversible error and has moved for remand to the Commissioner on this basis. The Commissioner proposes that the court remand the case to the Commissioner so that the Appeals Council may properly consider Dr. Haswell's report.

Although plaintiff agrees that the case should be remanded, counsel argues that the remand should include a new hearing based upon the other errors cited by counsel in his brief. The defendant argues that a new hearing is not necessary based upon HALLEX II-5-1-3. This section provides:

> On remand, the Administrative Law Judge shall offer the claimant the opportunity for a hearing except in a claim for Title II disability insurance benefits when the period at issue expired before the date of the hearing decision (e.g., insured status expired in a disabled worker's claim or the claimant reached age 22 in a child's insurance benefits claim). In those instances, the Administrative Law Judge need not offer the claimant the opportunity for a hearing unless the Administrative Law Judge finds that the facts warrant it.

*Id.* In this case, because the period during which plaintiff was eligible for DIB expired in 1995, and was before the date of the hearing decision, the HALLEX section does not "require" a new hearing. This does not *preclude* a new hearing, rather the decision as to whether the facts warrant such a hearing is left to ALJ. *Id.* This court agrees that the issue of the Appeal's Council's failure to consider Dr. Haswell's report must first go back to the Appeal's Council for consideration, and the Appeals Council must determine what further proceedings will take place based upon its decision.[14]

This court makes no finding as to whether a new hearing would or would not be appropriate. Any decision involving what plaintiff would have been able to do on or

_____

[14] Plaintiff states that the Appeals Council failed to give good reasons for disregarding the treating physician's opinion, but then argues that the case should be remanded for a de novo hearing and proper consideration of the report. (Pl.'s Br. at 14). However, such a remand would "short-circuit" the procedural requirements of a remand to the Commissioner, particularly when it was the Appeals Council that made the error in question.

before September 30, 1995 would be based on the records of prior examinations or opinions of physicians who would be making retrospective determinations. The court notes that all the pre-existing medical evidence was presented to ALJ Koennecke, and the record contains requests to various providers for medical or physical therapy reports, which were all returned indicating that the records were no longer in existence. (*See e.g.* T. 323-337).

Plaintiff argues that she will agree to the motion to remand only if the Appeals Council will guarantee a fully favorable decision, but that "since that is highly unlikely, there are considerable steps that need to be pursued to develop this claim properly for fair hearing and decision. It should not be short-circuited." (Dkt. No. 15). It is unclear what plaintiff's counsel means by "considerable steps." With respect to the case being "short-circuited," the court can only assume that the plaintiff means that this court should consider plaintiff's other arguments in addition to remanding based upon the Government's concession that the Appeals Council erred in its evaluation of Dr. Haswell's report. Thus, this court will proceed to consider plaintiff's other claims.

## VIII. <u>CREDIBILITY</u>

### A. **Legal Standards**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96

CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

## 2. Application

Plaintiff argues that the ALJ failed to provide any discussion as to how the above credibility "factors" were considered, and that the ALJ failed to provide any rationale for why the application of those factors impacted plaintiff's credibility. Plaintiff also alleges that the ALJ mischaracterized her testimony with respect to why her prior work "ended." (Pl.'s Br. at 16). When the ALJ discussed plaintiff's credibility, the ALJ noted both enhancements to, and detractions from, plaintiff's credibility. On the "enhanced" side, the ALJ noted that plaintiff was still receiving Workers' Compensation benefits, and she underwent a series of facet and epidural blocks during the period at issue. Presumably, one who was not in pain would not opt for such extensive treatment. (T. 17).

However, on the "detracting" side, plaintiff testified that during the period in question, she was sent to SECO[15] in Norwich. (*See* T. 51). Plaintiff stated that she was put through a series of tests at SECO; but plaintiff could not complete the tests because she was in so much pain that she started to cry and had to be helped from one area to another. (T. 51-52). Plaintiff stated that she was told that Workers' Compensation would be informed of the results of these tests. (T. 52). In her decision, the ALJ stated that if the results of these tests had been as bad as plaintiff testified,[16] "this seems to suggest that she would have had a 100 percent permanent evaluation [by Workers'

---

[15] SECO is a Physical and Occupational Therapy Practice which was founded in Norwich, New York. www.secophysicaltherapies.com.

[16] These are the "bad" results to which the ALJ referred in her credibility assessment. (T. 17).

Compensation instead of a permanent partial disability].” (T. 17). When the SECO records were requested, SECO responded by stating that there was “[n]o record of this patient.”[17] (T. 326). The ALJ was implying that plaintiff was exaggerating the results of these tests.

Plaintiff argues that the ALJ cannot assume how Workers’ Compensation would have evaluated the SECO records. (Pl.’s Br. at 15). While it is true that the SECO records themselves are not part of the transcript because they apparently no longer existed, Workers’ Compensation did an evaluation of plaintiff’s condition in 2006, and she was examined by an independent physician: Dr. Albert B. Kochersperger, M.D. (T. 262-64). In Dr. Kochersperger’s report, he notes that he reviewed “physical therapy notes from 9/17/92 . . . .” (T. 264). Dr. Kochersperger also stated that plaintiff had two independent medical examinations (“IME”) by Dr. Tomaluoli, one on September 17, 1992 and one on April 23, 1993. (T. 264). Dr. Kochersperger’s 2006 report states that plaintiff still needs treatment for the original back injury of 1987, but did not increase plaintiff’s level of disability from “Permanent Partial Disability” to total disability. He continued the same classification that was made when all the reports were reviewed in the first instance. While it is possible that the ALJ is correct in stating that Workers’ Compensation would have found plaintiff totally disabled if the results of her SECO tests were as bad as she stated, plaintiff is correct that the ALJ cannot base plaintiff’s credibility finding on such an assumption.

---

[17] The ALJ stated that “the undersigned cannot consider the claimant’s functional capacity evaluation, because it is not part of the evidence of record.” (T. 17).

Plaintiff also takes issue with the ALJ's interpretation of plaintiff's statement that she did not return to work "because of the back injury and also they closed the plant . . . before I recovered." (T. 17, 53-54). ALJ Koennecke stated that "[t]his seems to imply that the claimant was planning to go back to work before the plant closed." (T. 17). Plaintiff argues that although this is technically true, it is irrelevant because she worked as a hair dresser after she left the floor hand job and did not claim to become disabled until November 17, 1991 as she was "rolling a perm." (Pl.'s Br. at 16; T. 52-53). Plaintiff is correct that the ALJ's statement is irrelevant to the credibility decision because plaintiff did not claim disability onset until several years after she left the plant.

While the ALJ's first two assumptions regarding credibility may not have been supported by substantial evidence, any error is harmless because her final reason for discounting plaintiff's credibility is supported by the record. Where the application of the correct legal principles to the record would only lead to the same conclusion, there is no need to require agency reconsideration. *McKinstry v. Astrue*, 511 F. App'x 110, 111-12 (2d Cir. 2013); *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

The ALJ stated that on December 16, 1996, plaintiff told her primary care physician that she was walking two miles four to five times a day[18] and was not taking any medication for chronic disability. (T. 17, 515). The ALJ noted that this report was

---

[18] Although the court cannot make a specific finding, the court suspects that this may be a typographical error by Dr. Haswell, and that plaintiff may have stated that she walked two miles four to five times per week, particularly given her statement in April of 1996 that she walked two miles per day and was beginning to take step aerobics.

written "shortly after the claimant's July 15, 1996 application for Title II benefits had been denied on September 30, 1996." (T. 17). The ALJ also stated that in April of 1996, she told Dr. Haswell that she was walking two miles a day and was starting step aerobics. (T. 17, 515). Plaintiff argues that the ALJ "provided no reasoning as to how these reports did or did not relate to Plaintiff's condition during the relevant time period of November 19, 1991 through September 30, 1995." (Pl.'s Br. at 16).

Plaintiff misses the point. Credibility does not have to relate to a particular time period. The fact that plaintiff told her doctor that she was walking either two miles per day or two miles four to five times a day and starting a step aerobics class is inconsistent with her contemporaneous application for social security benefits in which she would have claimed that she could not perform any substantial gainful activity. In fact, in the December 16, 1996 report, in addition to noting plaintiff's walking, the doctor also stated that plaintiff "was unable to obtain SSI."[19] (T. 515). In the earlier report that mentions step aerobics, Dr. Haswell also states that plaintiff continues to be permanently partially disabled, and that "[s]he still has back and leg pain but is tolerating it much better." (T. 515). She was in no apparent distress, was able to forward flex to almost 90 degrees, had full extension, full side flexion, rotation bothered her "a little bit bilaterally," and she did have positive straight leg raising. Dr. Haswell then stated that patient "continues to be disabled." (T. 515).

While these statements were made after plaintiff's insured status expired, they

---

[19] Dr. Haswell appears to be incorrect about the benefits for which plaintiff was applying. She applied for DIB, not SSI in 1996 (unless there is another application of which this court is not aware). SSI would not have required plaintiff to prove disability as of a particular insured date.

23

are relevant to her credibility in general. The ALJ asked plaintiff whether there had been any substantial change in her condition between 1991 and the hearing in 2012. (T. 63-64). Plaintiff did not really answer the question, but stated that her "back is still very unpredictable." (T. 63). This court notes that in 2005, Dr. Haswell noted that plaintiff was "interested in trying to get a job at OSG where her husband works." (T. 492). She was walking two to three miles per day and doing some yoga for the last three months. "She currently really has no pain of her back unless she stresses it." (*Id.*) Dr. Haswell stated that plaintiff's back pain was "essentially resolved," and that he felt plaintiff had only a "mild partial disability." He wished her the best of luck in finding a job.[20] (*Id.*) Thus, the ALJ's credibility finding was supported by substantial evidence, based on her final basis for rejecting credibility and based upon the evidence that was before her at the time of her decision.

The court does note that the ALJ might have changed her credibility opinion based upon Dr. Haswell's RFC evaluation which was first submitted to the Appeals Council. On remand, the Appeal's Council may find that the new RFC evaluation would require a reconsideration of plaintiff's credibility and RFC, as discussed below in connection with plaintiff's claim that the ALJ should have used a vocational expert.

---

[20] The medical records do show that plaintiff's condition began to worsen in April of 2006 when she went to see Dr. Haswell "for evaluation of back pain similar to what she'd experienced when she injured her back at work back in 1991." (T. 490). However, plaintiff's worsening condition or the recurring of her condition in 2006 does not necessarily relate to her condition between 1991 and 1995.

## IX.  **VOCATIONAL EXPERT ("VE")**

### A.    **Legal Standards**

Once the plaintiff shows that she cannot return to her previous work, the

Commissioner bears the burden of establishing that the plaintiff retains the RFC to

perform alternative substantial gainful work in the national economy.  *Butts v.*

*Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004).  In the ordinary case, the ALJ carries out

this fifth step of the sequential disability analysis by applying the applicable Medical-

Vocational Guidelines ("the Grids").  *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d

Cir. 1999)).  The Grids divide work into sedentary, light, medium, heavy, and very

heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift,

carry, push, and pull.  20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F.

Supp. 662, 667 n.2 (S.D.N.Y. 1996).  *See also* 20 C.F.R. §§ 404.1567 & 416.967.  Each

exertional category of work has its own Grid, which then takes into account the

plaintiff's age, education, and previous work experience.  *Id.*  Based on these factors,

the Grids help the ALJ determine whether plaintiff can engage in any other substantial

work that exists in the national economy.  *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is

inappropriate' when they do not fully account for the claimant's limitations."  *Martin v.*

*Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted).  When significant

nonexertional impairments[21] are present or when exertional impairments do not fit

---

[21] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands.  20 C.F.R. §§ 404.1569a(c), 416.969a(c).

squarely within grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

"[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d at 603. Rather, only when a claimant's nonexertional limitations "significantly limit the range of work permitted by his exertional limitations" will sole reliance on the Grids be deemed inappropriate. *Id*. at 605-06. A claimant's work capacity is significantly diminished if there is an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Id*. at 606.

## B. Application

Plaintiff argues that the ALJ erred in relying solely upon the Grids to find that plaintiff was capable of performing jobs that existed in the national economy. (Pl.'s Br. at 17-18). Plaintiff claims, based upon Dr. Swick and Dr. Haswell's RFC evaluations, that plaintiff has "significant limitations in her ability to use her arms and hands," and that these "non-exertional" limitations significantly limited plaintiff's ability to do the full range of light work, necessitating the testimony of a VE. (Pl.'s Br. at 18).

First, the court would point out that plaintiff's counsel is citing to Dr. Haswell's 2012 report that ALJ Koennecke did not have before her to evaluate. Thus, she could

not have erred in failing to consider the doctor's statement that plaintiff could not use her hands or any other finding made in that report. If the Appeals Council remands the case to an ALJ to consider Dr. Haswell's RFC evaluation, the ALJ should reconsider the need for a VE in light of the report.

Counsel also cites Dr. Swick's RFC evaluation as support for this argument, and the ALJ noted that she considered the chiropractor's report. However, as a chiropractor, Dr. Swick is not an acceptable medical source for purposes of the regulations, and the ALJ did not give the report "controlling weight." (T. 16-17). ALJ Koennecke considered Dr. Swick's report, but rejected its restrictive RFC, in part, because he began treating plaintiff in 1998, three years after the date she was last insured, and his assessment was "clearly based on nothing more than the claimant's subjective report." (T. 17). In any event, this court notes that Dr. Swick did not place "significant limitations" on plaintiff's ability to use her hands or reach above her head. He stated that she could "frequently" use her hands and fingers, and "occasionally" reach (including overhead). There were no *medical* records before the ALJ that discussed any restrictions on plaintiff's ability to use her arms. Moreover, plaintiff testified at the hearing that, aside from the back pain, there were no other conditions that would make it difficult for her to work.[22] (T. 58). Accordingly, the ALJ did not err

---

[22] At the hearing, plaintiff testified that she could not pick up a bowl of mashed potatoes off the table when she was sitting, could not take milk out of the refrigerator, could not take clothes out of the washer or dryer, do any sweeping, vacuuming, or normal housework. (T. 56). These limitations were based upon her back problem, not problems with her arms or hands. (T. 55-56). Additionally, the ALJ found plaintiff only partially credible, thus, this testimony would not have affected the ALJ's determination that plaintiff could do the full range of light work.

in failing to consult a VE based on a record that did not document the alleged non-exertional impairment, involving plaintiff's ability to use her arms and hands.

Thus, this court recommends that this case be remanded for further evaluation of the treating physician's RFC by the Appeals Council as outlined above. It should be noted that the ALJ supported his finding that plaintiff could perform light work based on the conclusion that the doctors who performed plaintiff's nerve blocks in 1992-95 did not place any restrictions on plaintiff's return to work[23] and the fact that Workers' Compensation classified plaintiff as permanently partially disabled.[24] There was no opinion from an acceptable medical source, consultative or otherwise, that evaluated plaintiff's actual RFC. Dr. Haswell subsequently submitted an RFC evaluation which is more consistent with Dr. Swick's determination, and inconsistent with an ability to perform any light work. If the Appeals Council remands the case to an ALJ, the ALJ would need to reconsider whether plaintiff could perform light work during the period in question.

The court understands that it appears that there is no more medical evidence for

---

[23] One doctor did state on April 15, 1993 that plaintiff could return to "work" on April 16, 1993. (T. 221). The rest of the reports placed no date on the form for "return to work." The ALJ assumed that this meant that the doctors placed "no restriction" on plaintiff's return to work    an assumption that this court finds doubious.

[24] The assumption is that although the doctors essentially placed no restrictions on plaintiff's return to work during the relevant time period, Workers' Compensation considered that plaintiff could not return to her medium work job. Thus, the ALJ found that plaintiff could perform light work. The court must say that although it is the plaintiff's burden at Step 4 to establish his RFC, it appears that the ALJ's basis for finding that plaintiff can perform light work was thin.

the time period in question.[25]  However, the Commissioner, if appropriate, may be able to employ a medical expert to review all of the medical evidence of record and make the appropriate determination. *See Bathrick v. Astrue*, No. 3:11-CV-101, 2013 WL 1068180, at *5 (ordering that if the treating physician is unable to provide the necessary evidence, the ALJ shall attempt to obtain the evidence through other channels, such as an opinion from a medical expert, as provided in 20 C.F.R. § 404.1527(e)(2)(iii)).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's motion to remand (Dkt. No. 13) be **GRANTED**, and that this action be **REVERSED** and **REMANDED** to the Appeals Council pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 10, 2015

**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

[25] The court would also point out that the Commissioner could consider a closed period of disability benefits in view of the evidence showing that plaintiff may have improved, and then her condition became worse after 2006.